IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HENRY FORD WIMBUSH, : CIVIL NO. 1:CV-07-1377
      Petitioner, :
 : (Chief Judge Kane)
    v. :
 :
JEFFREY A. BEARD, et al., :
      Respondents :

**M E M O R A N D U M**

Before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner Henry Ford Wimbush ("Wimbush"), an inmate at the State Correctional Institution at Mahanoy, Pennsylvania. In the petition, Wimbush challenges his state conviction and sentence for robbery, theft and simple assault. He alleges the denial of due process of law when testimony was introduced at trial regarding other criminal activity, thereby prejudicing his right to a fair trial. (Doc. No. 1, Pet.) The petition is ripe for consideration and, for the reasons that follow, will be denied.

**I.    Background & Procedural History**

The following relevant facts are extracted from the opinion issued on December 1, 2000, by the Cumberland County Court of Common Pleas pursuant to Pennsylvania Rule of Appellate Procedure 1925. (Doc. No. 18-4.)

> On September 15, 1999, at approximately 1:45 p.m., defendant entered a Pennsylvania liquor store in Silver Spring Commons, Silver Spring Township, Cumberland County. He displayed a small handgun to the store clerk, Delores Fleischman, and demanded that she get him money from the store safe. She did as she was told. Defendant stole $695 from the store. Fleischman described the robber to the police as a black man weighing 350-400 pounds, and being approximately six feet tall. She said he was very smelly. He was wearing a black jogging suit with a stripe.

He had on a dark, "fishing type" hat. Fleischman testified at trial
and identified defendant as the person who robbed the State store.

The robbery was investigated by both the Silver Spring Township police
and the Pennsylvania State Police. Chief Gerald Steigleman of Silver
Spring Township testified that defendant became a suspect on September
17, 1999. On that day, the Chief showed a photo array to Delores
Fleischman, who had been confronted in the State store by the robber.
The clerk identified the robber from one of eight photos. That photo was
of defendant. Trooper Sally Worst of the Pennsylvania State Police
testified that Chief Steigleman told her that the store clerk had identified
Wimbush as the robber. Trooper Worst learned where defendant was
staying from Harrisburg Police Officer Gary Jones. As a result, on
September 17th, Worst obtained a search warrant for that location, the
apartment of Greta McAllister in Harrisburg, Dauphin County. The search
was conducted on September 17th. Troopers seized evidence that included
a black duffel bag in which there was a small black plastic toy gun and a
Pennsylvania Liquor Control Board merchandise bag. They also seized a
dark blue, fisherman type hat and a sweat suit. The top half of the
sweatshirt was black and the bottom half was white. It had red and black
sleeves. The sweatpants had a large red stripe and a small red stripe on
both legs. All of these items were admitted into evidence at trial.

Greta McAllister testified at trial that defendant had been sleeping
in a room in her apartment where he kept all of his "stuff." She
said his clothes "stunk." The items that the troopers seized were
defendant's.

Officer Gary Jones of the Harrisburg police testified that on
September 16th, he was attempting to locate Henry Wimbush and
found him in the apartment of Greta McAllister in Harrisburg.
Wimbush was in a room inside the apartment. In response to a
question, "What did you do," Officer Jones stated:

> I knocked on the door. I said, Henry, come on out. I
> attempted to open the door. The door was being held from
> the inside, at which time I pulled again to look inside to see
> who was there, and I told the subject he was under arrest.

Jones further testified that he took Wimbush with him that day. He
testified that he then told Trooper Worst that he had found
Wimbush at the apartment in Harrisburg. On September 17th,
Jones led the state police to the apartment where the state police
executed their search warrant.

2

> Trooper Steven Strawser, of the Pennsylvania State Police, participated in the search of McAllister's apartment on September 17th. After testifying about the seizures made during the search, the following exchange occurred between the assistant district attorney and the witness:
>
> > Q   Now, with the information that you had, the items of clothing that you found in the residence where Mr. Wimbush had been and the identification of Miss Fleischman, did you prepare an arrest warrant to place Mr. Wimbush under arrest for this particular robbery in Silver Spring Township:
> > A   Yes, I did.
> > Q   Were you - I apologize to the court reporter. Let me rephrase that. On what day did you go to place Mr. Wimbush under arrest for this crime?
> > A   That was on the 22nd of September.
>
> Trooper Strawser further testified that on the day he arrested defendant, September 22nd, defendant stated that he would like to ask him a "professional question: if you rob a place with a toy gun, should you get a recklessly endangering charge." Trooper Strawser had not told defendant that a toy gun had been recovered from his room when defendant made the statement. Defendant also told Trooper Strawser that drugs had taken control of his life and he was sorry for what had happened and that he would never hurt anyone. Defendant told Trooper Strawser that he was five foot eleven and weighed 375 pounds.

(Id. at 1-4.)

An additional fact of record omitted from the above factual summary by the trial court was that a postman named Scott Bishop observed Petitioner leaving the liquor store after his interaction with Ms. Fleischman, and that Bishop followed Petitioner for a short distance before being told to "get the f*** out of here." (Doc. No. 18-10 at 10.)

On May 10, 2000, the jury convicted Wimbush of robbery, theft and simple assault. On September 5, 2000, he was sentenced on the robbery count to a 25-50 year term of imprisonment. He was further ordered to make restitution to the Wine and Spirits Shop in the

3

amount of $695. His sentence on the theft and simple assault counts was to pay the costs of prosecution.

Wimbush filed a direct appeal from the judgment of sentence to the Superior Court of Pennsylvania. In a concise statement of matters complained of on appeal pursuant to Pa. R.A.P. 1925(b), one of the issues raised by Wimbush was as follows:

> During the trial, police officer Gary Jones of the Harrisburg Police Department testified that he arrested Defendant on September 16, 1999. During the course of the trial, other testimony from other witnesses showed that Defendant did not become a suspect for the above-captioned charges until September 17, 1999. The testimony of Gary Jones prejudiced Defendant by admitting into evidence evidence of other crimes Defendant may have committed. Defendant objected to this testimony by Gary Jones. The objection was overruled by the Trial Court. Defendant appeals the Trial Court's ruling in admitting this testimony and denying Defendant's objection and motion for a mistrial.

(Doc. No. 18-2 at 1-2.) On December 1, 2000, the trial court filed an opinion addressing this issue stating that (1) the testimony did not create a reasonable inference from which the jury could have concluded that Wimbush had engaged in prior criminal activity; and (2) even if the jury could have so inferred, the refusal to grant a mistrial was harmless error because of the overwhelming evidence of Wimbush's guilt, including identification of petitioner as the perpetrator by two eyewitnesses, and two inculpatory statements voluntarily given by petitioner to the police. (Doc. No. 18-4, 12/1/00 Trial Ct. Op.)

Wimbush raised five (5) grounds in his direct appeal to the Pennsylvania Superior Court. (Doc. No. 18-5, App. Br.) One of the grounds raised was with respect to whether the trial court erred in denying his motion for a mistrial after a Commonwealth witness testified as to his being engaged in prior criminal activity. On August 21, 2001, the Pennsylvania Superior Court denied

Wimbush's appeal. (Doc. No. 18-6, Super. Ct. Op.) In the opinion, the Superior Court rejected Wimbush's claim that the trial court had committed a reversible error of evidentiary law, and even if it had, the overwhelming evidence of guilt made any error with respect to the admission of the challenged testimony harmless. (Id. at 3.) A petition for allowance of appeal was denied on March 27, 2002, by the Pennsylvania Supreme Court. (Doc. No. 18-8.)

On August 22, 2002, Wimbush filed a pro se petition for relief pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9741 et seq. Following the appointment of counsel, an amended PCRA petition was filed on February 16, 2007. Only the following ground was raised: that due to a newly-issued decision by the Pennsylvania Supreme Court construing 42 Pa.C.S.A. § 9714, Wimbush was entitled to a new sentencing hearing during which he should be treated as a second-time violent offender rather than a fifth-time violent offender.

On May 2, 2007, following a hearing, the trial court issued an order that revoked the sentence imposed on September 6, 2000, and imposed a new sentence of 10-20 years incarceration for the same offenses. On May 22, 2007, Wimbush filed a motion for reconsideration of sentence asking the trial court to vacate the 10 to 20 year sentence and resentence him to a term of 5-10 years. This motion was denied the same day.

Wimbush filed the instant habeas petition on July 30, 2007, along with a motion for the appointment of counsel. In the petition, he raises a single ground - the trial court's denial of due process due to the introduction at trial of testimony regarding other criminal activity which prejudiced his right to a fair trial. On August 29, 2007, Petitioner filed a Notice of Election choosing to proceed on the instant petition as filed. (Doc. No. 6.) The motion for counsel was

5

denied on December 6, 2007. (Doc. No. 15.) An answer to the petition was submitted on March 3, 2008, along with supporting exhibits. (Doc. No. 18.) Petitioner filed a traverse on March 28, 2008.

## II. Discussion

### A. Exhaustion

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts. v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). Respect for

the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999)(citations omitted). While the petitioner need not cite "book and verse" of the federal Constitution, Picard v. Connor, 404 U.S. 270, 277 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here. Duncan v. Henry, 513 U.S. 364, 365 (1995)(quoting Picard, 404 U.S. at 275).

The above rule requires a federal court to dismiss without prejudice habeas petitions that contain any unexhausted claims. Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004). For claims that were not fairly presented to the state court, but for which "further state-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility." Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001). Although futile claims are deemed exhausted for federal habeas purposes, such claims are also procedurally defaulted; federal courts are not permitted to evaluate the merits of procedurally defaulted claims unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." McCandless, 172 F.3d at 260; see also Coleman v. Thompson, 501 U.S. 722, 750-51 (1991).

Respondents first argue that Petitioner's denial of federal due process claim was not fairly presented to the state courts because it was presented only as a claim based on state, not federal law. They maintain that he did not present to any state court his habeas claim alleging a

7

federal constitutional due process violation for the improper admission of evidence.

The issue of fair presentation was recently addressed by the Honorable John E. Jones III, of this Court, in the case of Johnson v. Mechling, 541 F. Supp.2d 651 (2008). In Johnson, following a thorough examination of the long line of Supreme Court and Third Circuit Court of Appeals precedent, Judge Jones concluded the following with respect to determining when a petitioner has "fairly presented" a federal claim to state courts:

> First, a petitioner fairly presents a federal claim when he explicitly identifies before the state courts the federal source of law in which his claim is grounded. Baldwin [v. Reese], 541 U.S. [27] at 32, 124 S. Ct. 1347; Duncan [v. Henry], 513 U.S. [364] at 365-66, 115 S. Ct. 887. For example, a petitioner could explicitly reference the particular provision of the Federal Constitution on which his claim is based. Second, a petitioner fairly presents a federal claim in his submissions to the state courts by relying on state or federal cases deciding his claim on federal grounds. Baldwin, 541 U.S. at 32, 124 S. Ct. 1347; McCandless [v. Vaughn], 172 F.3d [255] at 261; Evans [v. Court of Common Pleas], 959 F.2d [1227] at 1232; Daye [v. Attorney General of New York], 696 F.2d [186] at 194. For example, while not referencing a particular constitutional provision, a petitioner could rely on a case that analyzed his claim under federal law. Third, a petitioner fairly presents a federal claim when he presents the factual and legal substance of that claim to the state courts. Picard [v. Connor], 404 U.S. [270] at 278, 92 S. Ct. 509; [Anderson v.] Harless, 459 U.S. [4] at 6, 103 S. Ct. 276; Evans, 959 F.2d at 1231; Daye, 696 F.2d at 194. For example, although not explicitly referencing a particular constitutional provision or relying on a case decided on federal grounds, a petitioner could expressly assert the terms of a specific right protected by the Constitution or undertake the particular analysis required to assert a violation of that right.

Johnson, 541 F. Supp. 2d at 664 (footnote omitted).

In determining whether Petitioner "fairly presented" his due process claim to the state courts, this Court's focus is squarely on the direct appeal where Petitioner challenged the trial court's ruling admitting the testimony of Officer Jones, and denying his objection and motion for

a mistrial.[1]  There is no question that in raising his claim before the state courts Petitioner did not explicitly identify the federal source of law in which his claim is grounded.  He also did not rely on state or federal cases deciding his claim on federal grounds.  However, in reviewing the state court record, the Court finds that the instant case falls into the third category of fair presentation.  Petitioner's claim was reviewed by the state courts under a substantively identical analysis as would be applied in analyzing the federal due process claim.  The state courts engaged in the evaluation of the testimony admitted and the prejudicial effect of such testimony in light of the overall evidence presented in determining whether a mistrial was warranted.  Accordingly, the Court finds that Petitioner fairly presented his federal due process claim to the Pennsylvania courts, and therefore, has exhausted his available state remedies with respect to his federal due process claim.  The merits of the claim will now be addressed.

**B.     Merits**

Once a court is satisfied that a merits review of a claim is warranted, section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits shall not be granted unless the decision is contrary to, or involves an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. 2254(d).  AEDPA thus limits a federal court's authority to grant habeas relief when a state court has previously considered and rejected the federal claim on the merits.

To establish that the decision was contrary to federal law, "it is not sufficient for the

---

[1] Although Petitioner did file a PCRA, he only pursued a sentencing issue therein.

petitioner to show merely that his interpretation of supreme court precedent is more plausible than the state courts; rather, the petitioner must demonstrate that precedent *requires* the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999)(emphasis in original). "'Under the 'unreasonable application' clause [of § 2254(d)], a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' Jermyn v. Horn, 266 F.3d 257, 281-82 (3d Cir. 2001)(quoting Williams v. Taylor, 529 U.S. 362, 407, 120 S. Ct. 1495, 146 L. Ed.2d 389 (2000)). In determining whether the state court unreasonably applied Supreme Court precedent, the question is whether the state court's application of federal law was objectively unreasonable, not whether the application was, in the judgment of the federal habeas court, erroneous or incorrect. Id. at 282." Siehl v. Grace, 561 F.3d 189, 195 (3d Cir. 2009).

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with "clear and convincing evidence" of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); Matteo v. Superintendent, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

10

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp.2d at 296; see also Williams, 529 U.S. at 408-09.

In filing his habeas petition, Petitioner claims that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. As such, his claim will be evaluated under § 2254(d)(1) which requires him to demonstrate that the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In addressing Petitioner's claim, the state court applied rules consistent with prevailing principles established by the United States Supreme Court for the adjudication of evidentiary challenges. Habeas review does not encompass state court rulings on the admission of evidence unless there is a federal constitutional violation. See Marshall v. Lonberger, 459 U.S. 422, 438 n. 6 (1983); Engel v. Isaac, 456 U.S. 107, 119 (1982). Only where the erroneous application of state law deprives a petitioner of a fundamental constitutional guarantee will a federal court inquire into the state court rulings. Donnelly v. DeChristoforo, 416 U.S. 637, 642-43 (1974). It is well-established "that states have broad discretion to develop rules of evidence [that] they will

apply in their criminal proceedings." Lesko v. Owens, 881 F.2d 44, 51 (3d Cir. 1989). Furthermore, the trial judge has broad discretion with respect to the admission or exclusion of evidence. In re Merritt Logan, Inc., 901 F.2d 349, 359 (3d Cir. 1990). The narrow inquiry on federal habeas review is "whether the evidence's probative value is so conspicuously outweighed by its inflammatory content so as to violate a defendant's constitutional right to a fair trial." Lesko, 881 F.2d at 52. The state trial judge's rulings are accorded deference because he or she is "in a unique position to assess the relative probative value and inflammatory effect" of the evidence. Id. A state court's admission of evidence of prior crimes, wrongs or acts will be disturbed by a federal court on due process grounds only when admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. Johnson v. Love, 940 F. Supp. 738 (E.D. Pa. 1996).

In the instant case, Petitioner moved for a mistrial based upon the admission of testimony from Officer Jones regarding the fact that Jones had arrested Petitioner on September 16, 1999. He claims this evidence of "other criminal activity" prejudiced his right to a fair trial in light of the later testimony provided by Trooper Strawser that he had arrested Petitioner on September 22, 1999, for the liquor store robbery. In denying the motion for mistrial, the trial court determined that Jones' testimony, by itself, did not create a reasonable inference from which the jury could have concluded that defendant had been engaged in prior criminal activity. (Doc. No. 18-4.) The trial court further found that the grant of a mistrial was unwarranted because any error was harmless in light of the overwhelming evidence against Petitioner. This evidence included the statements made by Petitioner to Strawser such as "If you rob a place with a toy gun, should you get a recklessly endangering charge," and comments that drugs had taken

12

control of his life and he was sorry for what had happened. (Id.)

On direct appeal, the Pennsylvania Superior Court agreed with the trial court's finding that the evidence of Petitioner's guilt was overwhelming and, further, that there was no indication that the references to Petitioner's arrests had the substantive effect of suggesting that he was guilty of the present charges. (Doc. No. 18-6 at 3.) Petitioner's allowance of appeal to the Pennsylvania Supreme Court was denied.

The law applied by the state courts was completely consistent with federal constitutional due process principles. The state courts examined the probative value of the challenged evidence to determine whether it was outweighed by its prejudicial content so as to violate Petitioner's constitutional right to a fair trial. This Court must now determine, through objective evaluation, whether the decision of the state courts was a reasonable application of the clearly established federal law set forth above. For the reasons that follow, the Court finds that the decision of the state courts was not unreasonable.

Officer Jones from the Harrisburg Police Department testified that on September 16, 1999, he arrested Petitioner in the Harrisburg apartment of Greta McAllister, and took him with him that day. Defense counsel made a motion at sidebar arguing that Jones' testimony revealed to the jury that Petitioner had been arrested on September 16, 1999. The motion was denied on the basis that the court found that nothing in the case would lead the jury to draw any other inference than that Petitioner was arrested on said date with respect to the liquor store robbery at issue, since they knew nothing about procedures.

Thereafter, following Jones' testimony Pennsylvania State Trooper Strawser testified that he arrested Petitioner for the liquor store robbery on September 22, 1999. The trial court found

that while Jones' testimony alone did not create a reasonable inference from which the jury could have concluded that Petitioner had been engaged in prior criminal activity, Strawser's testimony would have made it apparent to the jury that Jones had arrested him the day prior on another case. This would further be enforced to the jury by the testimony of Chief Steigleman, who had testified that Petitioner did not become a suspect in the liquor store robbery until September 17, 1999, when the liquor store clerk identified him from a photo array. However, no objection by defense counsel was made.

The trial court found that Jones' testimony, standing alone did not create a reasonable inference from which the jury could have concluded Petitioner had been engaged in prior criminal activity. However, even if the testimony of the witnesses conveyed to the jury, by reasonable implication, that Petitioner was involved in other criminal conduct, the error was harmless, and therefore did not deprive Petitioner of a fair trial. They based this conclusion on the overwhelming evidence against Petitioner which included his question to Trooper Strawser "If you rob a place with a toy gun, should you get a recklessly endangering charge," and his statement to Strawser that drugs had taken control of his life and he was sorry for what had happened and he would never hurt anyone. (Doc. No. 18-12, T. Tr. at 11.) Other evidence in the record against Petitioner also included two eyewitnesses - Delores Fleischman and Scott Bishop - each of whom told the jury that Petitioner was the individual who robbed the liquor store and fled the scene. (Doc. No. 18-9, T. Tr. at 16.) Further, Fleischman described the robber to police as weighing between 350-400 pounds (Id. at 28), and Petitioner stated his weight at the time of arrest as 375 pounds. (Doc. No. 18-12 at 12.) The clothing, gun, hat and duffel bag described in connection with the robbery by witnesses, including Fleischman, were also found at Petitioner's

residence shortly thereafter, and were identified by witness Greta McAllister as belonging to Petitioner. (Doc. No. 18-10 at 32-33.) The duffel bag contained a toy gun and a Pennsylvania Liquor Control merchandise bag.

Based upon the overwhelming evidence of Petitioner's guilt, the trial court's decision not to grant a mistrial cannot be said to be unreasonable. In objectively evaluating the state court decisions, the record clearly supports the state courts' finding that any error was harmless, and that Petitioner was not denied a fundamentally fair trial. Accordingly, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HENRY FORD WIMBUSH, | : | CIVIL NO. 1:CV-07-1377 |
| Petitioner, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JEFFREY A. BEARD, et al., | : | |
| Respondents | : | |

## O R D E R

**AND NOW,** this 8th day of October, 2009, for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **denied**.

2. The Clerk of Court is directed to **close** this case.


                        S/ Yvette Kane
                        YVETTE KANE, Chief Judge
                        Middle District of Pennsylvania